## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
## WESTERN DIVISION

L.O.I. PROPERTY, LLC, et al.,                    Case No. 1:20-cv-1020
     Plaintiffs,                               Dlott, J.
                                                 Litkovitz, M.J.
    v.

BUTLER COUNTY, OHIO, et al.,                     **REPORT AND**
     Defendants.                               **RECOMMENDATION**

Plaintiffs L.O.I. Property, LLC, B.A.O. Productions, LLC, and Brett Oakley ("plaintiffs") bring this action against defendants Butler County, Ohio, the Butler County Board of County Commissioners, and Peter Acuff, in his official capacity as the Butler County Planning Administrator ("defendants") alleging federal and state procedural and substantive due process claims, federal and state equal protection clause claims, and a violation of the Butler County Rural Zoning Resolution ("Zoning Resolution"). (Doc. 1).[1] This matter is before the Court on defendants' motion for judgment on the pleadings (Doc. 17), plaintiffs' response in opposition (Doc. 25), and defendants' reply memorandum (Doc. 27).

## I. Factual background

This case arises from events surrounding defendants' denial of plaintiffs' zone-change application for a business planned unit development ("BPUD"). (Doc. 1). Plaintiff Brett Oakley ("Oakley") owns and operates Land of Illusion Adventure Park ("LOI"), a regional family entertainment venue[2], in Madison Township, Butler County, Ohio. (*Id.* at PAGEID 2, 4, 6). The

---

[1] Plaintiffs also alleged causes of action against Madison Township, Ohio, and Madison Township Board of Township Trustees ("Madison Township defendants"). (Doc. 1). The Madison Township defendants, however, were dismissed from the instant lawsuit on November 19, 2021 upon reaching a settlement with plaintiffs. (*See* Doc. 26).

[2] LOI includes seven haunted attractions (which operate each fall), a family-oriented Aqua Adventures park (which operate from late spring to late summer), and Christmas Glow—a "Christmas light drive-thru" and other "winter attractions" such as "a petting zoo, the 12 days of Christmas, a gift shop, the Christmas Village, and Santa's workshop." (Doc. 1 at PAGEID 7). LOI also "provides a venue for corporate and educational outings throughout the year" and "hosts a small number of musical concerts each year to support local and regional acts." (*Id.*).

primary parcel containing the LOI adventure park is 51.41 acres and zoned B-3 General Business pursuant to the Madison Township Zoning Map.  (*Id*. at PAGEID 7).

Prior to LOI being in its current location, Oakley operated "Middletown Haunted Trails in 1997 at his home on Meyers Road."  (*Id*. at PAGEID 6).  Plaintiffs allege that defendants "forced Mr. Oakley to close his operation on Meyers Road."  (*Id*.).[3]  Eventually, Oakley "purchased an old salvage yard in 2004 on Thomas Road [in Madison Township] to expand the Halloween haunt into a more permanent and safer environment."  (*Id*. at PAGEID 6).

In 2005, defendants unanimously approved Oakley's request to change the zoning classification from an A-1 Agricultural to a B-3 General Business classification for the largest parcel of land along Thomas Road where LOI operated.  (*Id*. at PAGEID 13).  Plaintiffs allege that from 2005-2020, defendants, for the most part, approved Oakley's requests for variances and conditional-use permits for the LOI property.  (*Id*.).  In March 2020, LOI sought a zone change for a BPUD encompassing 228 acres at 8762 Thomas Road.  (*Id*.).  Plaintiffs allege the BPUD request "came at the recommendation of Butler County planning staff, including Mr. Acuff— who suggested that rather than seeking to piecemeal zoning changes for the property, it would be better to have a cohesive plan for any future expansion."  (*Id*.).  Plaintiffs further allege that "Butler County planning staff instructed Mr. Oakley to include anything he might ever want to have on the property."  (*Id*. at PAGEID 14).  Plaintiffs' zone-change application for a BPUD included a plan for a campground, a themed hotel, an indoor water park, a family entertainment center, an expansion of the existing outdoor water park, and an amusement park.  (*Id*.).

---

[3] Plaintiffs also allege, however, that Oakley "sought to move" to a more secure location to continue the operation and add additional attractions.  (*Id*. at PAGEID 12).  Specifically, plaintiffs allege that when "looking for such a property, Mr. Oakley communicated with the Butler County Defendants to ensure that properties he was considering would ultimately provide a location for him to be able to operate his business and, at some point in the future, expand his business."  (*Id*.).

Subsequently, "Butler County planning staff, while acknowledging the ambition of the plan, recommended approval at the preliminary stage." (*Id*.). The Butler County Planning Commission similarly unanimously recommended approval of plaintiffs' zone-change application. (*Id*.). Plaintiffs allege, however, that the Butler County Rural Zoning Commission "unanimously recommended denial of the application." (*Id*.). Oakley withdrew his application prior to a hearing before the Butler County Board of County Commissioners ("Commissioners") "in an effort to take the suggestions and comments from the Butler County planning staff and amend the initial application." (*Id*.).

Plaintiffs thereafter submitted an amended application on September 22, 2020, which "contemplated many of the comments from the initial application and made changes to address concerns expressed by Butler County staff and nearby residents." (*Id*.). Plaintiffs allege the application outlined a master plan of 12-designated areas for the LOI expansion, a detailed six-phase plan for ten years of expansion, and 22 different planned unit development conditions which incorporated "recommendations by the Butler County planning department." (*Id*.).

The Butler County planning staff "changed their recommendation from approval of the zone-change application and the preliminary PUD [Planned Unit Development] plan to suddenly recommending denial." (*Id*. at PAGEID 15). Plaintiffs allege the Butler County planning staff "offered no reasoning for its change despite the proposed reduction in development intensity by the amended zone-change application." (*Id*.). Thereafter, the Butler County Planning Commission likewise changed their recommendation and voted to deny plaintiffs' amended application. (*Id*.). Plaintiffs allege the "Planning Commission provided no reasoning for its decision." (*Id*.). The Butler County Rural Zoning Commission then "unanimously

recommended denial of the [amended] application" and "provided absolutely no reasoning for its decision and asked no questions." (*Id*.).

The Commissioners voted to deny plaintiffs' amended zone-change application. (*Id*. at PAGEID 15-16). The Commissioners made the following findings concerning plaintiff's application:

> 1. The requested zoning map amendment to B-PUD for Land of Illusion (RZC 20-03) does not conform to the adopted Madison Township Proposed Land Use Plan's recommendation of residential or agricultural use for the subject site.
>
> 2. Analysis of Madison Township's development over the last 10-20 years shows very little change in the character of the Township, suggesting that the Land Use Plan adopted in 2001 is still relevant and applicable:
>
> > a. Since 2000, the Township's population has only increased by 2%, from 8,611 to 8,772 persons.
> >
> > b. Over the last ten years, there has only been an average of 5.8 new homes built annually, comprising 1.4% of residential permits issued countywide.
> >
> > c. A Department of Development planning study conducted in 2019 shows that land uses have remained stable over the past two decades, with only minor fluctuations in the percentage of land dedicated to agricultural, residential, recreational, commercial, and industrial uses.
> >
> > d. Since 2004, the County has considered ten zone change requests in Madison Township, only five of which were approved (two cases in 2004 and one case each in 2005, 2011, and 2019). Two prior zone change requests for the subject site (in 2015 and 2020) were withdrawn by the applicant.
>
> 3. The high-intensity commercial recreation uses proposed in the Preliminary Development Plan (PDP) are likely to adversely impact the existing land uses and have detrimental effects on the surrounding rural residential development, particularly with respect to development density and intensity, quality of life and enjoyment of property as zoned, and/or other public health, safety and general welfare elements, including but not limited to noise, traffic, sanitary wastewater treatment, storm water runoff, and demand for local emergency services.
>
> 4. The PDP does not adequately address the aforementioned adverse impacts or detrimental effects or adjoining property owners' voiced concerns during the public hearings process.

5. The PDP does not integrate or demonstrate protections to and for the public health, safety, and general welfare of the residents of Madison Township and Butler County, Ohio.

6. Relevant state and local agencies (Ohio EPA, Butler County General Health District, Butler Soil and Water Conservation District) have questioned the ability of the proposed project as illustrated in the PDP to provide public services in an effective manner.

7. The existing zoning districts on the subject site currently allow a broad range of uses, including production agriculture, residential development, and general business or institutional uses.

8. The Madison Township Trustees have expressed their opposition to the requested zoning map amendment.

(Doc. 17-1, Exh. D, at PAGEID 134-35).

Plaintiffs allege Oakley "provided significant evidence to show that the [amended] application complied with the conditions of the preliminary PUD plan" including "detailed presentations by his [Oakley's] planner and [] attorney." (Doc. 1 at PAGEID 15). Plaintiffs allege that the Commissioners "expressed dissatisfaction with Madison Township for having an obsolete Land Use Plan." (*Id.* at PAGEID 15-16).

## II. Standard of review

A motion for judgment on the pleadings is analyzed under the same standard applicable to a Rule 12(b)(6) motion to dismiss. *See D'Ambrosio v. Marino*, 747 F.3d 378, 383 (6th Cir. 2014). In determining a Rule 12(c) motion, the court must accept all well-pled factual allegations of the complaint as true and draw all reasonable inferences in favor of the plaintiffs. *Philadelphia Indem. Ins. Co. v. Youth Alive, Inc.*, 732 F.3d 645, 649 (6th Cir. 2013). The Court "need not accept as true legal conclusions or unwarranted factual inferences, and conclusory allegations or legal conclusions masquerading as factual allegations will not suffice." *D'Ambrosio*, 747 F.3d at 383 (quoting *Terry v. Tyson Farms, Inc.*, 604 F.3d 272, 275-76 (6th

Cir. 2010) (citation and quotation marks omitted)). "[A] plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do.'" *Republic Bank & Trust Co. v. Bear Stearns & Co., Inc.*, 683 F.3d 239, 246-47 (6th Cir. 2012) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). "Rather, '[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.'" *Id.* at 247 (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).

## III. Resolution

Plaintiffs allege five counts against defendants: Count I for violation of the due process clause of the Fifth and Fourteenth Amendments of the United States Constitution; Count II for violation of Article I, Sections 1, 2, 16, and 19 of the Ohio Constitution's due process protection; Count V for violation of the equal protection clause of the Fourteenth Amendment of the United States Constitution; Count VI for violation of Article I, Section 2 of the Ohio Constitution's equal protection and benefit clause; and Count X for violation of the Butler County rural zoning resolution. (Doc. 1). Defendants filed a motion for judgment on the pleadings on all counts in which they were named as defendants, i.e., Counts I, II, V, VI, and X. (Doc. 17).[4] For the reasons that follow, the Court **RECOMMENDS** that defendants' motion for judgment on the pleadings be granted.

### 1. Due Process claims (Counts I, II)

In Counts I and II of the complaint, plaintiffs allege that their procedural and substantive due process rights under the Fifth and Fourteenth Amendments, and Article I, Sections 1, 2, 16,

---

[4] The remaining causes of action in plaintiffs' complaint, i.e., Counts III, IV, VII, VIII, and IX, were dismissed pursuant to a joint stipulation of dismissal between plaintiffs and the Madison Township defendants. (*See* Doc. 26; 11/19/21 docket entry).

and 19 of the Ohio Constitution, were violated by defendants' denial of plaintiffs' application for rezoning and a preliminary BPUD. (Doc. 1 at PAGEID 16-22). "The requirements of due process under the Ohio and United States Constitutions are substantially identical." *Tri-Cty. Concrete Co. v. City of N. Royalton*, 181 F.3d 104, 1999 WL 357789, at *4 (6th Cir. 1999) (table) (quoting *Andres v. City of Perrysburg*, 546 N.E.2d 1377 (1988)). *See also Huggins v. City of Dayton*, No. 3:03-cv-300, 2008 WL 728324, at *4 (S.D. Ohio Mar. 14, 2008). Accordingly, because the same standards apply, the Court will analyze plaintiffs' federal and state due process claims together.

The due process clause of the Fourteenth Amendment provides that no "State [shall] deprive any person of life, liberty, or property, without due process of law. . . ." U.S. Const. amend. XIV. *See Tollbrook, LLC v. City of Troy*, 774 F. App'x 929, 933 (6th Cir. 2019) ("The Fourteenth Amendment to the United States Constitution protects individuals from the deprivation of 'life, liberty, or property, without due process of law.'") (citing *Id*.). "Due process has both a substantive and a procedural component." *Tollbrook*, 774 F. App'x at 933. *See Golf Vill. N. LLC v. City of Powell, Ohio*, 826 F. App'x 426, 432 (6th Cir. 2020) ("Procedural due process is traditionally viewed as the requirement that the government provide a fair procedure when depriving someone of life, liberty, or property; substantive due process protects individual liberty against certain government actions regardless of the fairness of the procedures used to implement them.") (citations and quotations omitted).

### A. Substantive due process

To state a claim for relief under the substantive due process clause, plaintiffs must allege facts that (1) they possessed a constitutionally protected liberty or property interest, and (2) the property interest was "deprived through arbitrary and capricious action." *Tollbrook*, 774 F.

App'x at 934 (quoting *EJS Props., LLC v. City of Toledo*, 698 F.3d 845, 855 (6th Cir. 2012)). *See also Bowers v. City of Flint*, 325 F.3d 758, 763 (6th Cir. 2003) (Substantive due process is "[t]he doctrine that governmental deprivations of life, liberty or property are subject to limitations regardless of the adequacy of the procedures employed") (citing *Pearson v. City of Grand Blanc*, 961 F.2d 1211, 1216 (6th Cir. 1992)).

### i.  Liberty or property interest

"Citizens have a substantive due process right not to be subjected to arbitrary or irrational zoning decisions." *Tollbrook*, 774 F. App'x at 933 (citing *Braun v. Ann Arbor Charter Twp*., 519 F.3d 564, 573 (6th Cir. 2008)) (citation and internal quotation marks omitted).  To establish a substantive due process violation, plaintiffs must first allege facts showing "they have a protected property or liberty interest."  *Oberer Land Devs., Ltd. v. Sugarcreek Twp., Ohio*, No. 3:19-cv-82, 2020 WL 1466184, at *4 (S.D. Ohio Mar. 26, 2020).  *See also J.D. P'ship v. Berlin Twp. Bd. of Trustees*, 412 F. Supp. 2d 772, 780 (S.D. Ohio 2005) ("To begin, Plaintiffs must demonstrate that they had a property interest in their zoning applications.").  Plaintiffs must specifically allege facts showing "they had a 'legitimate claim of entitlement' to approval of the revised development plan or a 'justifiable expectation' that the [Commissioners] would approve it."  *Oberer*, 2020 WL 1466184, at *5 (citing *Triomphe Inv'rs v. City of Northwood*, 49 F.3d 198, 202 (6th Cir. 1995)).  Plaintiffs can establish a "legitimate claim of entitlement" or "justifiable expectation" by alleging facts that "if Plaintiffs complied with certain minimum, mandatory requirements, the [Commissioners] had no discretion to deny approval of the plan."  *Id*. (citations omitted).

Said another way, it is well-established that "[a] party cannot possess a property interest in the receipt of a benefit when the state's decision to award or withhold the benefit *is wholly*

*discretionary.*" *EJS Props.*, 698 F.3d at 855 (quoting *Med Corp., Inc. v. City of Lima*, 296 F.3d 404, 409 (6th Cir. 2002)) (emphasis added). *See also J.D. P'ship*, 412 F. Supp. 2d at 780 (a protected property interest can exist only "if the law circumscribed the discretion of the Defendants to such an extent that approval of the particular use was mandatory once Plaintiffs met certain minimal requirements"); *Tollbrook*, 774 F. App'x at 935 (to establish a constitutionally protected property interest in the approval of the conditional rezoning request, the plaintiff "must show that the City lacked the discretion to deny [Tollbrook's] use of the land . . . if [it] complied with certain minimum, mandatory requirements") (internal citations and quotations omitted); *Ziss Bros. Const. Co. v. City of Indep., Ohio*, 439 F. App'x 467, 471 (6th Cir. 2011) (same); *White Oak Prop. Dev., LLC v. Washington Twp., Ohio*, No. 1:07-cv-595, 2009 WL 961175, at *13 (S.D. Ohio Apr. 7, 2009), *aff'd*, 606 F.3d 842 (6th Cir. 2010) (finding that developer did not have a property interest in a development plan because the board of trustees could "either adopt or deny, or adopt some modification" of the zoning commission's recommendation).

Plaintiffs allege that the Zoning Resolution outlines the procedure if "a property owner desires to submit a zone-change application for a [BPUD]" and in doing so, a property owner "must adhere to Section 13" of the Zoning Resolution. (Doc. 1 at PAGEID 8). Plaintiffs allege that they "have a protected property interest under the Fifth and Fourteenth Amendments in the ownership and development of the Property as proposed in the preliminary PUD plan submitted to Butler County." (*Id.* at PAGEID 16). Plaintiffs further allege that they "possess a legitimate claim of entitlement and justifiable expectation in their property and liberty interests" because, "among other reasons," plaintiffs (1) relied on the suggestions and instructions from Butler County planning staff; (2) "expended significant sums to design, plan, and create" LOI; and (3)

"produced extensive evidence before the Butler County Defendants. . . ."  (*Id*. at PAGEID 17-18).  Plaintiffs argue that they "possess the right to receive a zone change for a [BPUD] when satisfying the preliminary PUD plan conditions of the Rural Zoning Resolution."  (*Id*. at PAGEID 18).

Defendants argue that the Court should grant their motion for judgment on the pleadings on plaintiffs' due process claims because plaintiffs have no protected property interest in the requested rezoning.  (Doc. 17 at PAGEID 104, 112-116).  Citing to relevant Sixth Circuit and Southern District of Ohio case law, defendants contend that the Commissioners retained the discretion to approve or reject plaintiffs' zoning request pursuant to Article 13 of the Zoning Resolution.  (*Id*. at PAGEID 113).  Defendants also argue that in addition to having the discretion to deny plaintiffs' rezoning application, the Commissioners specifically identified numerous criteria showing that plaintiffs' rezoning application was denied for failing to meet substantive aspects of the Zoning Resolution.  (*Id*. at PAGEID 114; *see also* Doc. 27 at PAGEID 739).  Defendants additionally contend that a property interest was not created by plaintiffs' reliance on any alleged recommendations or communications made by defendants prior to the submittal of the rezoning application.  (Doc. 17 at PAGEID 114-115).

To determine whether defendants had discretion to approve or reject plaintiffs' proposed development plan, the Court looks to Ohio Rev. Code § 303 and the Zoning Resolution.  *See Wedgewood Ltd. P'ship I v. Twp. of Liberty*, 456 F. Supp. 2d 904, 931 (S.D. Ohio 2006) ("This Court must apply state zoning laws to determine whether a legitimate claim of entitlement or a justifiable expectation exists.").  *See also Ziss Bros*., 439 F. App'x at 472 ("In Ohio, 'the right to approval of a land-use proposal is determined by the regulation in existence at the time the

application is filed.'") (quoting *Andreano v. City of Westlake*, 136 F. App'x 865, 871 (6th Cir. 2005)).

Ohio Rev. Code § 303.022, "Establishing or modifying planned-unit developments," provides, in pertinent part, "Property owners who wish to have planned-unit development regulations apply to their property may apply to have the zoning map amended pursuant to section 303.12 of the Revised Code to rezone their property as a planned-unit development and no longer subject to any previously applicable zoning regulations."  Ohio Rev. Code § 303.022(A).  Subsection (B) provides, "Upon the application of property owners, the board of county commissioners may establish a planned-unit development for their property, designating the property as a planned-unit development on the zoning map in accordance with the procedures set forth in section 303.12 of the Revised Code. . . ."  Ohio Rev. Code § 303.022(B).

Section 303.12, "Amendments to zoning resolution," provides, in pertinent part, "Amendments to the zoning resolution may be initiated . . . by the filing of an application by one or more of the owners or lessees of property within the area proposed to be changed or affected by the proposed amendment with the county rural zoning commission."  Ohio Rev. Code § 303.12(A)(1).  Following proper "notice of the hearing," as provided for by the regulations, "[t]he county or regional planning commission shall recommend the approval or denial of the proposed amendment or the approval of some modification of it and shall submit its recommendation to the county rural zoning commission."  Ohio Rev. Code § 303.12(E). Thereafter, "[t]he county rural zoning commission, within thirty days after the hearing, shall recommend the approval or denial of the proposed amendment, or the approval of some modification of it, and shall submit that recommendation together with the motion, application, or resolution involved, the text and map pertaining to the proposed amendment, and the

11

recommendation of the county or regional planning commission on it to the board of county commissioners." *Id*. "The board of county commissioners, upon receipt of that recommendation, shall set a time for a public hearing . . . and [w]ithin twenty days after its public hearing, the board of county commissioners shall either *adopt or deny the recommendation of the county rural zoning commission or adopt some modification of it*. If the board denies or modifies the commission's recommendation, a majority vote of the board shall be required." Ohio Rev. Code § 303.12(E)-(H) (emphasis added).

The Court finds that the Ohio Revised Code, on its face, grants legislative discretion to the Commissioners "to approve or reject a proposed development." *Oberer*, 2020 WL 1466184, at *5 (finding that the Ohio Revised Code granted discretion to the Board of Township Trustees to approve or reject a proposed development plan). The Court must next determine "whether such discretion is otherwise circumscribed" by the Zoning Resolution. (*Id.*).

Article 13 of the Zoning Resolution establishes the governing rules and standards concerning PUDs. (Doc. 25-1 at PAGEID 403, Article 13). Article 13.031 describes the procedure for an owner/developer seeking to establish a preliminary PUD:

> The owner/developer(s) shall submit his application for PUD zoning and the Preliminary PUD Plan for the proposed development to the County Rural Zoning Commission for its review and recommendation. The County Rural Zoning Commission shall advertise and hold a public hearing in accordance with the procedures outlined in the Ohio Revised Code, Section 303.12. Following the public hearing, the County Rural Zoning Commission shall forward the application, Preliminary Plan, their written recommendations, and the report of the County Planning Commission to the Butler County Board of County Commissioners, who shall advertise and hold a public hearing and approve, modify or disapprove the application and Preliminary PUD Plan in accordance with the procedures outlined in the Ohio Revised Code, Section 303.12 and those specified in Sections 13.04 and 13.05 of this Resolution.

(*Id*. at PAGEID 410, Article 13.031). Article 13.04, in turn, provides:

13.041  Upon receipt of the report of the County Rural Zoning Commission, the Board of County Commissioners shall study and review the proposed PUD application and Preliminary PUD Plan to (1) see that all requirements have been satisfied, and (2) ascertain that the following specific conditions are fully met:

13.042 That the PUD District is in conformance with the Land Use Plan for Butler County.

13.043  That the total density and/or lot coverage proposed for the development does not exceed the maximum density or lot coverage allowed for the Planned Unit Development as a whole.

13.044  That the use(s) proposed will not be detrimental to present and potential surrounding uses but will have a beneficial effect which could not be achieved under other zoning districts.

13.045  That the areas proposed shall be used only for those uses permitted under these provisions and the usual accessory uses.

13.046  That the internal streets and primary and secondary roads that are proposed shall properly interconnect with the surrounding existing primary and secondary road network as designated on the Butler County Thoroughfare Plan.

13.047  That the minimum common open space area(s) has been designated and shall be duly transferred to a legally established Homeowner's Association, commercial management group or they have been dedicated to Butler County as herein provided.

13.048  That the Preliminary PUD Plan is consistent with the intent and purpose of this Resolution: to promote public health, safety and general welfare of the residents of Butler County, Ohio.

(*Id*. at PAGEID 411, Article 13.041-.048).  Finally, Article 13.05 provides, in pertinent part:

If, from the facts presented, the Board of County Commissioners is unable to make the necessary findings, the application shall be denied. . . . In taking action, the County Commission *may deny the Preliminary PUD Plan or may recommend approval of said plan subject to specified modifications*.

(*Id*. at PAGEID 411-12, Article 13.051) (emphasis added).

Plaintiffs argue that defendants "did not have discretion to deny the Application" because plaintiffs "met the necessary criteria for approval of a preliminary PUD plan."  (Doc. 25 at PAGEID 279).  Plaintiffs therefore contend that the "Zoning Resolution created a protected

13

property interest which Defendants violated." (*Id*.).  In support, plaintiffs exclusively rely on *Ritz v. City of Findlay, Ohio*, No. 3:07-cv-3716, 2009 WL 1954635 (N.D. Ohio July 6, 2009) and claim that just "like the resolution at issue in *Ritz*," the Commissioners had no discretion to deny the application for a preliminary BPUD once the "conditions [in the Zoning Resolution] are met[.]"  (Doc. 25 at PAGEID 278).

Plaintiffs' argument, however, has been expressly rejected by *Oberer*, 2020 WL 1466184, at *6-7, which is only case to consider *Ritz*.  In *Oberer*, the court granted the defendants' motion for judgment on the pleadings on the plaintiffs' substantive and procedural due process claims because the Board of Trustees had discretion to approve or deny the plaintiffs' application for a proposed development plan, and the plaintiffs therefore could not show that they had a legitimate claim of entitlement or a justifiable expectation that the proposed plan would be approved.  *Id*.  The court rejected the plaintiffs' argument that they had a legitimate claim of entitlement to approval of their application pursuant to *Ritz*.  *Id*. at *6.  The court stated:

> In arguing that they have a legitimate claim of entitlement to approval of their application, Plaintiffs rely heavily on the unpublished case of *Ritz v. City of Findlay*, No. 3:07cv3716, 2009 WL 1954635 (N.D. Ohio July 6, 2009).  The ordinance at issue in that case provided that the Planning Commission "shall consider" a list of criteria in reviewing a plan submission.  It then had authority to approve, approve with conditions, or "if appropriate, reject the site plan submission if it is nonconforming."  *Id*. at *5.  The court held that the use of the word "shall," combined with the authority to reject the plan submission "if it is nonconforming," provided a "mandate that the Commission must approve conforming applications, either with or without conditions."  *Id*.  The court held that, because the plaintiffs' site plan conformed to all listed criteria, they had a justifiable expectation that the plan would be approved.  *Id*. at *6.  Plaintiffs argue that, as in *Ritz*, Section 6.06(D) of the Sugarcreek Township Zoning Resolution lists eight criteria that "shall" serve as conditions that should be satisfied before the approval of the preliminary development application" for a R-PUCD.  Doc. #5-4, PageID#139.
>
> Plaintiffs' reliance on *Ritz* is misplaced for two reasons.  First, in sharp contrast to the ordinance at issue in *Ritz*, nothing in Sugarcreek Township's Zoning Resolution

14

limits the authority of the Board of Trustees to reject a plan only if it fails to conform to the criteria set forth in Section 6.06(D). The Zoning Resolution states that the eight criteria "shall serve as conditions that should be satisfied" before the approval of the application. Doc. #5-4, PageID#139. However, nothing indicates that, if all criteria are satisfied, the application must be approved.

Second, Plaintiffs' argument is based on the presumption that their revised application met all eight approval criteria set forth in Section 6.06(D) of the Zoning Resolution. Not all those criteria, however, are objective. For example, the Board of Trustees clearly has discretion to determine whether "[t]he R-PUCD application and preliminary development application are consistent with the recommendations of the Sugarcreek Township Comprehensive Development Plan and the requirements of this Resolution." *Id*. The Board, in fact, cited several reasons why it believed that Plaintiffs' revised application did not pass muster, most notably traffic concerns in the immediate area of the proposed development.

*Id*. at *6-7. The court stated, "Therefore, as a matter of law, Plaintiffs cannot establish a protected property interest, and have failed to state a plausible substantive or procedural due process claim." *Id*. at *7.

The Court finds *Oberer* persuasive and instructive in this regard. First, just as the plaintiffs argued in *Oberer* that once a plan conformed to all listed criteria in the zoning resolution, the plaintiffs had a justifiable expectation that the plan would be approved, in the instant case, plaintiffs likewise contend that defendants "did not have discretion to deny the Application" because plaintiffs "met the necessary criteria for approval of a preliminary PUD plan." (Doc. 25 at PAGEID 279). However, "in sharp contrast to the ordinance at issue in *Ritz*," nothing in the Zoning Resolution limits the authority of the Commissioners "to reject a plan only if it is fails to conform to the criteria set forth in" Article 13 of the Zoning Resolution. *Oberer*, 2020 WL 1466184, at *7. Article 13.041 explains that "the Board of County Commissioners shall study and review the proposed PUD application and Preliminary PUD Plan to (1) see that all requirements have been satisfied, and (2) ascertain that the following specific conditions are fully met[.]" (Doc. 25-1 at PAGEID 411, Article 13.041 of the Zoning Resolution). Article

15

13.051 of the Zoning Resolution, in turn, provides, "If, from the facts presented, the Board of County Commissioners is unable to make the necessary findings, the application shall be denied. . . . In taking action, *the County Commission may deny the Preliminary PUD Plan* or *may recommend approval of said plan subject to specified modifications*." (*Id.*, Article 13.051 of the Zoning Resolution) (emphasis added). Like the Sugarcreek Township's Zoning Resolution in *Oberer*, "nothing indicates that, if all criteria are satisfied, the application must be approved." *Oberer*, 2020 WL 1466184, at *7. Rather, the text of the Zoning Resolution gives discretionary decision-making authority to the Commissioners by use of the permissive term "may," as opposed to the mandatory term "shall." *See Tollbrook*, 774 F. App'x at 935 (citing *EJS Props.*, 698 F.3d at 856).

Second, just as in *Oberer*, plaintiffs' "argument is based on the presumption" that the application for a preliminary PUD "met" the criteria set forth in Article 13.04 of the Zoning Resolution. *Oberer*, 2020 WL 1466184, at *7. Not all of those criteria, however, are objective. For example, the Commissioners have discretion to determine whether the "PUD District is in conformance with the Land Use Plan for Butler County" (13.042); whether "the use(s) proposed will not be detrimental to present and potential surrounding uses but will have a beneficial effect which could not be achieved under other zoning districts (13.044); whether "the internal streets and primary and secondary roads that are proposed shall properly interconnect with the surrounding existing primary and secondary road network as designated on the Butler County Thoroughfare Plan" (13.046); and whether "the Preliminary PUD Plan is consistent with the intent and purpose of this Resolution: to promote public health, safety and general welfare of the residents of Butler County, Ohio" (13.048). Factors such as whether the plan is "detrimental" and "beneficial" to other land uses or "consistent" with promoting "public health, safety and

16

general welfare" are considerations that are "inherently subjective."  *Tollbrook*, 774 F. App'x at 935.

Accordingly, the Court finds that plaintiffs cannot establish they have a protected property interest in the ownership and development of the LOI property as proposed in the preliminary BPUD plan submitted to Butler County because the Zoning Resolution gives deference to the Commissioners to deny the application even if plaintiffs complied with certain minimum, mandatory requirements.

Plaintiffs also allege that they possessed a protected property interest based on the "suggestion and instruction from Butler County planning staff, including Mr. Acuff[.]"  (Doc. 1 at PAGEID 17).  Plaintiffs allege that LOI sought a zone change for a BPUD "at the recommendation of Butler County planning staff, including Mr. Acuff—who suggested that rather than seeking to piecemeal zoning changes for the property, it would be better to have a cohesive plan for any future expansion."  (*Id.* at PAGEID 13).  Plaintiffs therefore allege that they had a property interest due to Butler County planning staff's express suggestions, recommendations, and instructions.  (*Id.* at PAGEID 13, 17).

Defendants argue that plaintiffs' "allegations are insufficient to establish a protected property interest" because "a property interest must be based on something more than unilateral anticipation."  (Doc. 17 at PAGEID 114-15) (quoting *Med. Corp.*, 296 F.3d at 409).  Defendants also argue that Section 13.02 of the Butler County Rural Zoning Resolution (*see* Doc. 10 at PAGEID 64; Doc. 25-1 at PAGEID 409) expressly provides that "no statement or representation by the Zoning Administrator or Planning Commission shall be binding upon the Board of County Commissioners."

To the extent that plaintiffs allege that they possessed a property interest based on the alleged recommendation of planning staff, plaintiffs' argument is without merit.  It is well-established that "[i]n order to have a property interest in a benefit, a person must have more than a desire for it or unilateral expectation of it; rather, he must have a legitimate claim of entitlement to it." *Braun*, 519 F.3d at 573 (internal quotations omitted).  Moreover, the Zoning Resolution expressly encourages plaintiffs to consult with planning staff prior to preparing a PUD application, with the caveat that any statements or representations are not binding upon the Commissioners.  The Zoning Resolution expressly provides:

> The owner/developer(s) are encouraged to engage in informal consultation with the Zoning Administrator and Planning Commission prior to preparing the Preliminary PUD Plan, it being understood that no statement or representation by the Zoning Administrator or Planning Commission shall be binding upon the Board of County Commissioners.

(Doc. 25-1 at PAGEID 409, Article 13.02 of the Zoning Resolution).  Accordingly, plaintiffs' argument that they possessed a property or liberty interest based on the alleged recommendation of planning staff is without merit.

In sum, the Court finds that construing the complaint in the light most favorable to plaintiffs, plaintiffs have not alleged facts showing they possess a "legitimate claim of entitlement" or a "justifiable expectation" in approval of their application for rezoning and a preliminary BPUD.  Accordingly, plaintiffs' substantive due process claim fails on this basis.

### ii.  Arbitrary or capricious action

Even if plaintiffs can establish that they had a protected liberty or protected interest, plaintiffs must also allege facts that the protected interest was "deprived through arbitrary and capricious action." *Tollbrook*, 774 F. App'x at 934, 936 (quoting *EJS Props.*, 698 F.3d at 855). Under certain circumstances, a plaintiff may be able to state a substantive due process claim

18

without first establishing a protected interest—this is called a "shocks-the-conscience" claim. *Id*. "However, 'in the context of a discretionary zoning decision, government action will not shock the conscience unless the arbitrary and capricious action touches on a protectable interest.'" *Id*. at 936 (quoting *EJS Props*., 698 F.3d at 862). The Sixth Circuit's decision in *Tollbrook* is instructive in this regard.

There, the Sixth Circuit upheld the district court's decision granting the defendant's motion to dismiss the plaintiff's substantive due process claims because the plaintiff had no constitutionally protected property interest. *Tollbrook*, 774 F. App'x 929. The Sixth Circuit stated the plaintiff had "no constitutionally protected property interest in the approval of the conditional rezoning request" because "the decision [to grant a conditional rezoning request was] wholly committed to the discretion of the City Council." *Id*. at 936. The Court of Appeals further stated that because the plaintiff "failed to plausibly allege that it had a constitutionally protected property or liberty interest in the approval of its conditional rezoning request, its substantive due process claim fail[ed], and we need not address whether the City's decision was arbitrary and capricious." *Id*.

Consistent with the Sixth Circuit's decision in *Tollbrook*, the Court need not address whether the Commissioners' decision was arbitrary and capricious because plaintiffs fail to allege facts that they possessed a protected liberty or property interest in their rezoning application for a preliminary BPUD. *Id*.

### B. Procedural due process

As best the Court can discern, plaintiffs appear to allege that defendants deprived plaintiffs of their procedural due process rights when plaintiffs "deferred their initial plans to continue along with piecemeal zoning approvals in favor of submitting the more omnibus

19

Application at the recommendation and encouragement of Butler County planning staff." (Doc. 25 at PAGEID 280). Plaintiffs contend that their "procedural rights" were violated when defendants reversed course and denied their application for rezoning and a preliminary BPUD. (*Id*.).

To state a claim for relief under the procedural due process clause, plaintiffs must allege facts showing "1) [plaintiffs] possessed a constitutionally protected property or liberty interest; 2) [plaintiffs were] deprived of that interest; and 3) the state did not afford [plaintiffs] adequate procedural rights prior to depriving [plaintiffs] of that interest." *Taylor Acquisitions, L.L.C. v. City of Taylor*, 313 F. App'x 826, 830 (6th Cir. 2009). "In resolving the procedural due process claim, the first issue is whether the [plaintiffs] were deprived of a property interest." *Warren v. City of Athens, Ohio*, 411 F.3d 697, 708 (6th Cir. 2005). As previously explained, plaintiffs have failed to allege facts showing they have a protected liberty or property interest in their rezoning application for a preliminary BPUD.[5] Accordingly, the Court **RECOMMENDS** that defendants' motion for judgement on the pleadings be granted on this basis concerning plaintiffs' state and federal procedural due process claims.

## 2. Equal Protection claims (Counts V, VI)

In Counts V and VI of the complaint, plaintiffs allege that defendants violated their equal protection rights by treating similarly situated property owners "differently (better) than" plaintiffs. (Doc. 1 at PAGEID 29). As best the Court can discern, plaintiffs appear to allege that defendants, in denying their application for a preliminary BPUD, "deprived plaintiffs of their property and liberty interests by discriminatory treatment in comparison with other similarly

---

[5] The Court notes that plaintiffs fail to include any allegations that defendants "did not afford [plaintiffs] adequate procedural rights prior to depriving [plaintiffs] of that interest." *Taylor Acquisitions*, 313 F. App'x at 830.

situated persons" and there was "no rational basis for the discriminatory treatment" of plaintiffs. (*Id*.).

Plaintiffs bring their causes of action pursuant to the equal protection clause of the Fourteenth Amendment (Count V) and Article I, Section 2 of the Ohio Constitution's equal protection and benefit clause (Count VI). (Doc. 1 at PAGEID 28-29). "Equal Protection claims under the Ohio Constitution and the Fourteenth Amendment of the United States Constitution are governed by essentially the same standards." *Ullmo v. Ohio Tpk. & Infrastructure Comm'n*, 126 F. Supp. 3d 910, 919 (N.D. Ohio 2015) (citing *Warren*, 411 F.3d at 704, n. 6 (citation omitted)). Accordingly, because the same standards apply, the Court will analyze plaintiffs' federal and state equal protection claims together.

Defendants argue that plaintiffs' equal protection claim must be dismissed because plaintiffs "fail to allege how they were similarly situated to such other applicants, stating only, 'Upon Information and belief, the other property owners that were treated differently (better) than [plaintiffs] were similarly situated in all material respects.'" (Doc. 17 at PAGEID 120, citing Doc. 1 at PAGEID 29). Defendants claim that "since 2004, the Butler County Defendants have considered ten zoning changes requests in Madison Township, only five of which were approved." (*Id*.). Defendants maintain that plaintiffs "were not treated differently than similarly situated applicants" and "[w]here such departures from the Land Use Plan occurred, the property owners were significantly differently situated from Plaintiffs." (*Id*.). In support of this position, defendants attached "the last three zoning applications where approval was recommended despite lack of compliance with the Land Use Plan" as exhibits to their motion for judgment on the pleadings. (*Id*. at PAGEID 121; Doc. 17-2, Exh. F, G, H). Defendants contend these zoning applications "reflect significant distinctions between Plaintiffs and such property owners." (*Id*.).

21

Plaintiffs argue that the Court should not consider these applications because "[t]hey are merely cherry-picked, self-serving, and incomplete examples that Defendants characterize as distinguishable."  (Doc. 25 at PAGEID 283).  Plaintiffs further argue that defendants "include only the resolutions memorializing the decisions" of the Commissioners and "do not offer as evidence the underlying applications submitted by each of the prior landowners they seek to distinguish."  (*Id*.).  Plaintiffs contend that "discovery will be necessary to compare the disparate treatment from past applications for a preliminary PUD plan."  (*Id*.).

The undersigned has not considered these "three zoning applications" offered by defendants.[6]  Rather, the Court, as it is required to do so, looks at plaintiffs' complaint to see if it contains sufficient factual matter to state a claim to relief that is plausible on its face.  *Republic Bank*, 683 F.3d at 247 (quoting *Iqbal*, 556 U.S. at 678).

The Fourteenth Amendment's equal protection clause provides: "[N]o state shall deny to any person within its jurisdiction the equal protection of the laws."  U.S. Const. amend. XIV, § 1.  The purpose of the equal protection clause of the Fourteenth Amendment is to protect individuals against "intentional and arbitrary discrimination, whether occasioned by express terms of a statute or by its improper execution through duly constituted agents."  *Warren*, 411 F.3d at 710 (citing *Sioux City Bridge Co. v. Dakota Cnty.*, 260 U.S. 441, 445 (1923) (internal quotation marks and citation omitted)).

The equal protection clause prevents states from making distinctions that "(1) burden a fundamental right; (2) target a suspect class; or (3) intentionally treat one individual differently from others similarly-situated without any rational basis."  *Johnson v. Bredesen*, 624 F.3d 742,

---

[6] Moreover, as will be discussed, plaintiffs' federal and state equal protection causes of action fail to state a claim for relief because *even if* the Court determined that plaintiffs were "similarly situated" with others for equal protection purposes, plaintiffs nevertheless fail to include any allegations that defendants acted with ill will or animus in denying plaintiffs' rezoning application for a preliminary BPUD.

746 (6th Cir. 2010) (citing *Radvansky v. City of Olmsted Falls*, 395 F.3d 291, 312 (6th Cir. 2005)). Plaintiffs do not allege that defendants' actions burdened a fundamental right or that plaintiffs are part of a suspect class. Therefore, plaintiffs are proceeding under the third theory, known as the "class of one" theory. *Vill. of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000). To state a claim for relief under a "class of one" theory, plaintiffs must allege facts showing defendants treated plaintiffs "differently from others similarly situated and that there is no rational basis for such difference in treatment." *Andrews v. City of Mentor, Ohio*, 11 F.4th 462, 473 (6th Cir. 2021) (quoting *Warren*, 411 F.3d at 710).

### A. Similarly situated

To show plaintiffs were "similarly situated" with others for equal protection purposes, plaintiffs must allege facts that they were similarly situated "in all material respects." *Rondigo v. L.L.C. Twp. of Richmond*, 641 F.3d 673, 682 (6th Cir. 2011). *See also TriHealth*, 430 F.3d at 790 ("Materiality is an integral element of the rational basis inquiry. . . . [D]isparate treatment of persons is reasonably justified if they are dissimilar in some material respect."). In determining whether individuals are "similarly situated," the standard is not "exact correlation," but instead the court should look for "relevant similarity." *Bench Billboard Co. v. City of Cincinnati*, 675 F.3d 974, 987 (6th Cir. 2012) (quoting *Perry v. McGinnis*, 209 F.3d 597, 601 (6th Cir. 2000) (citation omitted)).

Plaintiffs, however, do not include any specific factual allegations that they were similarly situated with others for purposes of their equal protection claims. Rather, plaintiffs allege, in a conclusory fashion, that, "Upon information and belief, the other property owners that were treated differently (better) than L.O.I. Property, B.A.O. Productions, and Mr. Oakley were similarly situated in all material respects." (Doc. 1 at PAGEID 29). Plaintiffs have not

alleged sufficient factual content to enable the Court to conclude that the complaint states a plausible claim for equal protection under a "class of one" theory because plaintiffs fail to include any allegations that they were similarly situated with others. *Twombly*, 550 U.S. at 555. The Sixth Circuit's decision in *16630 Southfield Ltd. P'ship v. Flagstar Bank, F.S.B.*, 727 F.3d 502 (6th Cir. 2013) is instructive in this regard.

In *16630 Southfield*, the Sixth Circuit held that the plaintiffs failed to allege a plausible inference of discrimination by "referring to conclusory allegations in the complaint that the defendant violated the law." *Id*. at 505. There, the plaintiffs brought a civil action alleging that the defendant had discriminated against them on the basis of national origin by refusing to refinance a loan in violation of the Equal Credit Opportunity Act. *Id*. at 503. The plaintiffs alleged that the defendant treated "comparable non-Iraqi applicants more favorably" based "upon information and belief." *Id*. at 506. The Sixth Circuit found that the "factual matter in the complaint [did] not support an inference of discrimination" because alleging discrimination based "upon information and belief" is the "kind[] of conclusory allegation[] that *Iqbal* and *Twombly* condemned and thus told us to ignore when evaluating a complaint's sufficiency." *Id*. at 505-06. The Court of Appeals stated that the plaintiffs failed to identify "any similarly situated individuals whom [the defendant] treated better. They have merely alleged their 'belief' that such people exist." *Id*. at 506. The Sixth Circuit concluded that plaintiffs' "'naked assertions devoid of further factual enhancement' contribute nothing to the sufficiency of the complaint." *Id*. (quoting *Iqbal*, 556 U.S. at 678).

Just as the plaintiffs' allegations in *16630 Southfield* were based "upon information and belief," in the instant case, plaintiffs likewise allege, "Upon information and belief, the other property owners that were treated differently (better) than L.O.I. Property, B.A.O. Productions,

and Mr. Oakley were similarly situated in all material respects."  (Doc. 1 at PAGEID 29).

Plaintiffs have therefore failed to identify other individuals who were similarly situated in all

material respects or include any factual allegations plausibly showing they were similarly

situated with others for purposes of their equal protection claims.

### B.  Ill will or animus

Even if, however, plaintiffs can establish that they were "similarly situated" to other

property owners, the Court nevertheless recommends that defendants' motion for judgment on

the pleadings be granted on plaintiffs' equal protection claims because plaintiffs fail to allege

facts showing defendants acted with animus or ill will.

In addition to showing that plaintiffs were treated differently than those who were

similarly situated in all material respects, plaintiffs must allege facts showing "there is no

rational basis for such difference in treatment." *Andrews*, 11 F.4th at 473 (quoting *Warren*, 411

F.3d at 710).  "A 'class of one' plaintiff may demonstrate that a government action lacks a

rational basis in one of two ways: either by negat[ing] every conceivable basis which might

support' the government action or by demonstrating that the challenged government action was

motivated by animus or ill-will." *Id*. (quoting *Warren*, 411 F.3d at 711).[7]  The Sixth Circuit

defined animus or ill will as follows:

> We have previously defined these terms as reflecting a "deep-seated and sometimes
> virulent" act of "antagonism," "hostility," and "animosity."  [*Loesel v. City of
> Frankenmuth*, 692 F.3d 452,] 466 [(6th Cir. 2012)].  Opposition to the requested
> action is not enough, strong or otherwise; rather, a class-of-one plaintiff must
> demonstrate that government officials directed their animus toward her.  *Id*. at 467.
> Put differently, "a plaintiff must prove that the challenged government actions were
> motivated by personal malice unrelated to the defendant's official duties." *Taylor*

---

[7] The Court notes that plaintiffs do not argue that defendants lacked any conceivable basis which might support the
denial of their rezoning application for a preliminary BPUD.  Rather, plaintiffs contend that the challenged
government action, i.e., the denial of plaintiffs' rezoning application, lacked a rational basis because it was
motivated by animus or ill will.  (Doc. 25 at PAGEID 284).

> *Acquisitions, LLC v. City of Taylor*, 313 F. App'x 826, 838 (6th Cir. 2009) (citation and emphasis omitted).

*Shavers v. Almont Twp., Michigan*, 832 F. App'x 933, 939 (6th Cir. 2020). Ill will or animus must be directed at the person (i.e., the alleged class of one); animus "towards [a] Preliminary Plan do[es] not constitute animus sufficient to undermine" the challenged government action. *Ziss Bros.*, 439 F. App'x at 479 (affirming district court's grant of summary judgment to defendants on plaintiff's equal protection claim because the plaintiff failed "to raise allegations of personal ill-will or animosity" because the "animus was directed towards the Preliminary Plan").

Plaintiffs argue that they "have sufficiently pled allegations that would support a finding that the challenged government action was motivated by such animus." (Doc. 25 at PAGEID 284). Plaintiffs allege that defendants' actions were motivated by animus or ill will because defendants "previously forced Mr. Oakley to close his Middletown Haunted Trails operation at his home on Meyers Road," and defendants "made an abrupt change of course after inducing Plaintiffs to submit the Application [for a preliminary BPUD] instead of submit their plans for various parcels as they saw fit." (Doc. 25 at PAGEID 284). Plaintiffs allege that "[*f*]*or whatever reason*, Mr. Oakley and his business enterprises have long been a target of disparate treatment by the Defendants." (*Id*.) (emphasis added).

Plaintiffs first allege that defendants' conduct constituted ill will or animus because defendants "previously forced Mr. Oakley to close his Middletown Haunted Trails operation at his home on Meyers Road." (Doc. 25 at PAGEID 284). Plaintiffs, however, fail to allege how this single action by defendants, which allegedly occurred sometime between 1997 and 2004[8],

---

[8] Plaintiffs do not specify *when* defendants allegedly "forced Mr. Oakley to close his operation at Meyers Road." (Doc. 1 at PAGEID 6). Plaintiffs allege the Middletown Haunted Trails started in 1997 at Oakley's home on

was in any way connected to the 2020 denial of plaintiffs' rezoning application such that the Court could reasonably infer defendants acted with ill will or animus in denying plaintiffs' application. Moreover, although plaintiffs allege that "Mr. Oakley and his business enterprises have long been a target of disparate treatment by the Defendants" (*Id*.), plaintiffs fail to put forth any specific allegations supporting this statement. Rather, plaintiffs allege in their complaint that defendants "unanimously approved" plaintiffs' zone change request in 2005 "from an A-1 Agricultural to B-3 General Business classification," and defendants, "for the most part," approved plaintiffs' requests from 2005 to 2020 for a "number of variances and conditional-use permits for the Property." (Doc. 1 at PAGEID 13). Plaintiffs fail to allege a pattern of disparate treatment by defendants, and the Court is unable to plausibly infer some pre-existing bias or motive to retaliate against plaintiffs based on the single allegation relating to the closing of the Middletown Haunted Trails some 15 years earlier.

Second, plaintiffs contend that defendants acted with ill will or animus by making "an abrupt change of course after inducing Plaintiffs to submit the Application instead of submit their plans for various parcels as they saw fit." (Doc. 25 at PAGEID 284). Plaintiffs fail to explain how this alleged conduct by defendants constitutes ill will or animus, nor do they cite legal authority supporting this conclusion. Even if defendants allegedly "induc[ed]" plaintiffs to submit their zone-change application as opposed to "submit[ting] their plans for various parcels as they saw fit" (*Id*.), the Zoning Resolution expressly encourages plaintiffs to consult with planning staff prior to preparing a PUD application, with the caveat that any statements or representations are not binding upon the Commissioners. (Doc. 25-1 at PAGEID 409, Article

---

Meyers Road and defendants forced him to close his operation. (*Id*.). Plaintiffs allege that Oakley "purchased an old salvage yard in 2004 on Thomas Road to expand . . . into a more permanent and safer environment." (*Id*.).

13.02 of the Zoning Resolution). Accordingly, any consultation with, or statements made by, defendants prior to plaintiffs submitting their application cannot establish ill will or animus.

Moreover, plaintiffs put forth no allegations that "the challenged government actions were motivated by personal malice unrelated to [] defendant[s'] official duties." *Shavers*, 832 F. App'x at 939 (quoting *Taylor Acquisitions*, 313 F. App'x at 838). *See, e.g., Olech*, 528 U.S. at 563 (recognizing a "class of one" equal protection claim where the village's demand for a larger easement to connect plaintiff's property to the municipal water supply was allegedly "motivated by ill will resulting from the Olech's previous filing of an unrelated, successful lawsuit against the Village"). The complaint provides no factual content or context from which the Court may reasonably infer that any of the defendants' actions constituted ill will or animus. *See Iqbal*, 556 U.S. at 678.

Accordingly, the Court **RECOMMENDS** that defendants' motion for judgment on the pleadings be granted concerning plaintiffs' federal and state equal protection claims.

### 3. Violation of the Butler County Rural Zoning Resolution (Count X)

Plaintiffs' tenth cause of action alleges that defendants violated the County Zoning Resolution. Plaintiffs bring this state law claim under the Court's supplemental jurisdiction. (Doc. 1). It is well-established that when a district court dismisses all claims over which it has original jurisdiction, the court should decline to exercise supplemental jurisdiction over a plaintiff's state law claims. 28 U.S.C. § 1367(c)(3); *Gamel v. City of Cincinnati*, 625 F.3d 949, 952 (6th Cir. 2010) (noting that "[w]hen all federal claims are dismissed before trial, the balance of considerations usually will point to dismissing the state law claims, or remanding them to state court if the action was removed" (quotation omitted)). The district court should maintain supplemental jurisdiction over a plaintiff's state law claims only where required by "the interests

of judicial economy and the avoidance of multiplicity of litigation." *Moon v. Harrison Piping Supply*, 465 F.3d 719, 728 (6th Cir. 2006) (citation omitted). Those interests would not be served by maintaining supplemental jurisdiction over plaintiffs' claim involving the County Zoning Resolution. The Court should decline to exercise supplemental jurisdiction over this claim and dismiss Count X without prejudice.

## IT IS THEREFORE RECOMMENDED THAT:

Defendants' motion for judgment on the pleadings (Doc. 17) be **GRANTED** and that Counts I, II, V, and VI be dismissed with prejudice and Count X be dismissed without prejudice.

Karen L. Litkovitz
Chief United States Magistrate Judge

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
## WESTERN DIVISION

L.O.I. PROPERTY, LLC, et al.,                    Case No. 1:20-cv-1020
     Plaintiffs,                               Dlott, J.
                                      Litkovitz, M.J.

     v.

BUTLER COUNTY, OHIO, et al.,
     Defendants.

### NOTICE

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to this Report & Recommendation within **FOURTEEN (14) DAYS** after being served with a copy thereof.  This period may be extended further by the Court on timely motion by either side for an extension of time.  Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections.  If the Report and Recommendation is based in whole or in part upon matters occurring on the record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon, or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs.  A party may respond to another party's objections **WITHIN 14 DAYS** after being served with a copy thereof.  Failure to make objections in accordance with this procedure may forfeit rights on appeal.  *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).